**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **BAB SYSTEMS, INC., an Illinois corporation,** | ) | FILED: JUNE 30, 2008 |
| | ) | 08CV3737 |
| | ) | |
| **Plaintiff,** | ) | JUDGE LINDBERG |
| | ) | MAGISTRATE JUDGE COLE |
| v. | ) | **Case No.** |
| | ) | TC |
| **STEINMAN & STEINMAN, INC., a Florida corporation, MARC STEINMAN, LEE STEINMAN, individually and as personal representative of the ESTATE OF MARVIN STEINMAN and MARA HENDERSON,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendants,** | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PETITION**
**TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

Petitioner BAB Systems, Inc. ("Petitioner"), by its attorneys, respectfully submits this Memorandum of Law in Support of its Petition to Compel Arbitration, pursuant to Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4.

**PRELIMINARY STATEMENT**

This action arises out of a written Franchise Agreement (the "Franchise Agreement") entered into by and between BAB Systems, Inc. ("BAB"), a franchisor of retail stores offering fresh baked bagels, muffins, cream cheeses, coffee and coffee-based drinks, and other food and beverage items under the name and mark "Big Apple Bagels," and former franchisees Steinman & Steinman, Inc., Marc Steinman, Lee Steinman, and Mara Henderson, in which the parties agreed to arbitrate all disputes arising out of or relating to the Franchise Agreement.

Now claiming that BAB made various misrepresentations that induced them to enter into the Franchise Agreement ten years ago, and/or that BAB breached the Franchise Agreement by

failing to render "adequate" support during its term, Steinman & Steinman commenced an action alleging fraud and breach of contract in Florida state court. BAB has filed a demand for arbitration against Respondents alleging that Respondents breached various post-expiration covenants under the Franchise Agreement; however, Respondents falsely claim they never signed the Franchise Agreement and are not bound by it.

The merits (or lack thereof) of Respondents' claims aside, BAB and Respondents expressly agreed, in entering into the Franchise Agreement, that they would submit all disputes arising out of or relating to the Franchise Agreement to arbitration before the American Arbitration Association. Since all of Respondents' claims fall squarely within the scope of the Agreement's arbitration provision, § 4 of the FAA requires that Respondents submit those claims to arbitration.

## RELEVANT BACKGROUND FACTS

### I.    THE PARTIES

BAB is an Illinois corporation. It was organized and established under the laws of the State of Illinois in December 1992. BAB's offices, at which all of the Company's executives and nearly all of its employees are based, is at 500 Lake Cook Road, Suite 475, in Deerfield, Illinois. It is BAB's principal, and only, place of business. BAB's business is franchising stores that sell freshly baked bagels and muffins, cream cheeses, coffee and coffee drinks, and other food and beverage items under the name and mark "Big Apple Bagels." Murtaugh Decl., ¶¶ 2-3.

Respondent Steinman & Steinman is a Florida corporation with its principal place of business in Shalimar, Florida. Petition to Compel Arbitration ("Pet. To Compel"), ¶ 7. Respondents Marc Steinman and Lee Steinman are residents and citizens of the State of Florida. Pet. To Compel, ¶ 8. Respondent Mara Henderson is a resident and citizen of the State of Texas. Id. The Steinmans, Henderson and Marvin Steinman, now deceased, whose personal

representative is Lee Steinman, are and were shareholders of Steinman & Steinman.  Pet. To Compel, ¶¶ 1, 8.

On June 11, 1998, Mark Steinman, Marvin Steinman and Lee Steinman entered into a franchise agreement with BAB (the "Franchise Agreement") to operate an existing Big Apple Bagels franchised store at 1191-B Eglin Parkway in Shalimar, Florida, which they purchased from a BAB franchisee.  Subsequently, the Steinmans assigned the Franchise Agreement to plaintiff Steinman & Steinman, Inc. without novation (the "Assignment") and guaranteed Steinman & Steinman's payment and performance of each of the obligations of franchisee under the Franchise Agreement (the "Guaranty").  Murtaugh Decl., ¶ 4, Exs. A-C.

Section 17.d of the Franchise Agreement provides that "if Franchisor is required to enforce this Agreement in an arbitration or judicial proceeding or appeal thereof, the party prevailing in such proceeding shall be entitled to reimbursement of its costs and expenses, including, but not limited to, reasonable accounting, legal and attorneys' fees."  Murtaugh Decl., Ex. A.

Steinman & Steinman operated a Big Apple Bagels store at 1191-B Eglin Parkway in Shalimar, Florida for ten years.  In early 2008, as the initial term of the Franchise Agreement was drawing to a close, BAB learned that Steinman & Steinman did not intend to renew the Franchise Agreement, and BAB began a dialog with Steinman & Steinman and its legal counsel concerning the disposition of the store on expiration of the Franchise Agreement on June 11, 2008, including BAB's intention to try to find a replacement franchisee and to exercise its post-expiration right to purchase the assets of the business for a price determined in accordance with the Franchise Agreement.  Murtaugh Decl., ¶ 5.

Notwithstanding the parties' agreement to arbitrate their disputes, the day before the Franchise Agreement was to expire Respondents commenced an action in Florida state court, entitled *Steinman & Steinman, Inc. v. BAB Systems, Inc., et al.*, Case No. 2008-CA-3206 (First Judicial Circuit Court, Okaloosa County, Florida) (the "State Court Action"), claiming, in substance, that BAB was not entitled to enforce a covenant not to compete and an option to purchase the assets of Respondents' Big Apple Bagels franchised business, upon its expiration on June 11, 2008, because BAB allegedly had made misrepresentations in connection with the execution of the Agreement in 1998 and breached certain obligations under the Agreement continuously during its term. Murtaugh Decl., ¶ 6.

Subsequent to the filing of the State Court Action, Steinman & Steinman added its landlord, Shalimar Plaza, LLC, and an equipment vendor, Fife Refrigeration, Inc., as defendants, alleging that the landlord and vendor claimed lien rights on equipment located in the former Big Apple Bagels store. While BAB believes that the claims against the landlord and vendor are shams, and that they were named as defendants specifically to defeat diversity of citizenship jurisdiction in order to prevent removal of the State Court Action, BAB does not seek to arbitrate any claims involving the "lien claimants," nor to stay the State Court Action as to those defendants, to the extent that Steinman & Steinman wishes to adjudicate the validity of the alleged lien claims. Murtaugh Decl., ¶ 7, Ex. D.

Shortly after filing the State Court Action, Steinman & Steinman obtained an ex parte temporary injunction against BAB, and a hearing was set on the extension of that motion for June 24, 2008. In the face of the imminent temporary injunction hearing, on or about June 18, 2008, BAB filed a motion to stay the State Court Action. Murtaugh Decl., ¶ 8, Ex. E.

As a result of Steinman & Steinman's refusal to recognize BAB's post-expiration rights under the Franchise Agreement, BAB filed a demand for arbitration with the American Arbitration Association against Steinman & Steinman, Inc., Marc Steinman, Lee Steinman and Mara Henderson, seeking arbitration in Chicago, Illinois of BAB's claims against them for breach of their post-expiration obligations under the Franchise Agreement.  Murtaugh Decl., ¶ 9, Ex. F.

In response to BAB's filing of its motion to stay proceedings pending arbitration in the State Court Action and its demand for arbitration, Steinman & Steinman, in an attempt to avoid the agreement to arbitrate, filed a series of motions in the State Court Action, each of which was based on the false allegation that various provisions of the Franchise Agreement were not enforceable because Steinman & Steinman did not sign the Franchise Agreement containing the arbitration clause, venue provision, choice of law provision and submission to jurisdiction. Although the copy of the Franchise Agreement that Steinman & Steinman chose to attach to its pleadings in the State Court Action is unsigned, the original Franchise Agreement was signed by the parties, as was the assignment of the Franchise Agreement to Steinman & Steinman, pursuant to which it agreed to be bound by all of the provisions of the Franchise Agreement, including the arbitration clause, as was the Steinmans and Henderson's Guaranty in which they agreed to be personally bound by every provision of the Franchise Agreement.  Murtaugh Decl., ¶¶ 10-11 and Exs. A-C and G-J.

Because they are bound by their agreement to arbitrate all disputes with BAB arising out of or relating to the Franchise Agreement, and because all of the claims in the State Court Action and the arbitration do arise out of or relate to the Franchise Agreement, Respondents must be

compelled to arbitrate those claims in accordance with the terms of the parties' agreement to arbitrate.

## ARGUMENT

II.    **BAB IS ENTITLED TO AN ORDER COMPELLING RESPONDENTS TO SUBMIT THEIR CLAIMS TO ARBITRATION**

The principles underlying the policies favoring arbitration agreements are well-established. Where, as here, there is an agreement to arbitrate, the FAA reflects a strong, well-established, and widely recognized federal policy in favor of arbitration. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 941 (1983) (the FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary.").[1] Indeed, the 'primary purpose' of the FAA is to ensure "that private agreements to arbitrate are enforced according to their terms." *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford, Jr. Univ.*, 489 U.S. 468, 479, 109 S. Ct. 1248, 1256 (1989).

In accordance with that policy, § 4 of the FAA enables a party to invoke the authority of a court to enforce an agreement to arbitrate by compelling a reluctant party to arbitrate a dispute. That section provides in pertinent part as follows:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court that, save for such agreement, would have jurisdiction under Title 28, in a

---

[1]    The arbitration agreements at issue in this case clearly fall within the scope of the FAA. The FAA applies whenever there is an agreement to arbitrate contained in "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. The Supreme Court held that the FAA extends to the full reach of the Commerce Clause. *See Allied-Bruce Terminix Cos. v. Dobson*, 115 S. Ct. 834, 841 (1995). Since the Agreement calls for a continuous stream of services and payments to be exchanged between BAB, an Illinois corporation with its principal place of business in Illinois, and Respondent Steinman & Steinman, a Florida corporation with its principal place of business in Florida, it plainly evidences "commerce" among the several states for purposes of the FAA. *See Ommani v. Doctors Assoc., Inc.*, 789 F.2d 298, 299 (5th Cir. 1986); *Creson v. Quickprint of America, Inc.*, 558 F. Supp. 984, 986 (D. Mo. 1983).

civil action . . . of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

9 U.S.C. § 4. Accordingly, "[i]n considering [a] motion to compel arbitration the court is to decide two limited issues: (1) does a valid agreement to arbitrate exist between the parties, and (2) does the agreement to arbitrate cover the underlying dispute." *Elzinga & Volkers, Inc. v. LSSC Corp.*, 838 F. Supp. 1306, 1309 (N.D. Ind. 1993); *We Care Hair Development, Inc. v. Engen*, 180 F.3d 838, 844 (7th Cir. 1999). If both questions are answered "yes" – as they must be here – the court "may not consider the merits, but must refer the matter to arbitration." *Bosworth v. Ehrenreich*, 823 F. Supp. 1175, 1179 (D.N.J. 1993); *accord AT&T Technologies, Inc. v. Communication Workers of America*, 475 U.S. 643, 649-50 (1986).

### A.    There Is No Real Dispute As To The Validity Of The Arbitration Agreement

Section 2 of the FAA provides as follows with respect to the enforcement of agreements to arbitrate:

> *A written provision* in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, ... be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

There is no dispute that the parties' Franchise Agreement contains a written provision requiring the parties to settle controversies by arbitration. Respondent Steinman & Steinman filed a complaint and an amended complaint in the State Court Action, stating that the same Franchise Agreement as is attached to the Murtaugh Declaration as Exhibit A (albeit, Steinman & Steinman used an unsigned version) had been entered into by the parties on or about June 10, 1998. That Franchise Agreement contains the arbitration clause that is the subject of Petitioner's

motion to compel arbitration. Although Section 2 of the FAA does *not* require an arbitration clause to be signed in order to be enforceable,[2] in fact the Franchise Agreement *was* signed, as evidenced by Exs. A-C of the Murtaugh Declaration, and Respondents' repeated verified pleadings in the State Court Action alleging that the parties "entered into" the Franchise Agreement that contains the arbitration clause.[3] Murtaugh Decl., Ex. D, ¶ 10.

In Steinman & Steinman's motion to strike unsigned arbitration provision in the State Court Action (Murtaugh Decl., Ex. G) it also seeks to avoid enforcement of the agreement to arbitrate by claiming that even if the agreement were signed, it should not be enforced because it is procedurally and substantially unconscionable. However, Respondent Steinman & Steinman did not offer any specifics as to why the parties' arbitration provision is unconscionable, and its unsupported conclusions are insufficient to undermine enforceability. *Carbajal v. H&R Block Tax Services*, 372 F.3d 903, 906 (7th Cir. 2004) ("the cry of 'unconscionable!' just repackages the entire assertion that arbitration should be disparaged as second class adjudication. It is precisely to still such cries that the Federal Arbitration Act equates arbitration with other contractual terms." *See, Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270-71, 115 S. Ct.

---

[2]     In *Vancil Contracting v. Tres Amigos Properties*, 2008 WL 207539 slip op.(Bkrtcy C.D. Ill., January 23, 2008), summary judgment was granted against a party denying the existence of a valid written contract in bankruptcy proceedings, where same party had filed a verified state court complaint alleging that the parties had "entered into a contract," The court found that the prior acknowledgment of the entry into a contract in the verified state court complaint was a judicial admission, stating that "once made, a judicial admission removes the proposition in question from the field of disputed issues," relying on *Soo Line R. Co. v. St. Louis S.W. Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997) ("[J]udicial efficiency demands that a party not be allowed to controvert what it is already unequivocally told a court by the most formal and considered means possible.").

[3]     The language of Section 2 of the FAA requiring a "written provision" to arbitrate as opposed to a signed agreement to arbitrate, should be given its plain and ordinary meaning. *See Williams v. Taylor*, 120 S. Ct. 1479, 1488 (2000), cited in *In re Realnetwork, Inc. Privacy Litigation*, 2000 WL 631341 *2-3 (N.D. Ill. 2000) (holding that electronic agreement that was printable and storable, and contained an arbitration clause, satisfied the "written provision" requirement of Section 2 of the FAA).

834, 130 L. Ed.2d 753 (1995)); *See also, Dorsey v. HCP Sales*, 46 F. Supp.2d 804, 806-07 (N.D. Ill. 1999) (general unconscionability contentions go to validity of the contract as a whole and do not defeat a motion to compel arbitration).

**B.    The Arbitration Clause Encompasses Respondents' Claims**

Just as there is no basis for challenging the validity of the arbitration agreement, there is no question that the dispute is arbitrable, that is, the claims fall within the scope of the parties' agreement to arbitrate. The standard for satisfying that test is not high.

Whether an issue is to be decided by an arbitrator is a matter of the parties' contractual intent. *AT&T Technologies*, 475 U.S. at 648, 106 S. Ct. at 1418; *accord Matthews v. Rollins Hudig Hall Co.*, 72 F.3d 50, 53 (7th Cir. 1995). However, "[t]he court is to make this determination by applying the 'federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the [Federal Arbitration] Act.'" *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S. Ct. 3346, 3353 (1985) (quoting *Moses H. Cone Memorial Hosp.*, 460 U.S. at 24, 103 S. Ct. at 941). "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62, 115 S. Ct. 1212, 1218 n.8 (quoting *Moses H. Cone Memorial Hosp.*, 460 U.S. at 24-25, 103 S. Ct. at 941). Doubts regarding arbitrability should be resolved in favor of arbitration "unless it can be said with <u>positive assurance</u> that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute." *AT&T Technologies*, 475 U.S. at 650; *accord Mitsubishi Motors Corp.*, 473 U.S. at 626; *Matthews*, 72 F.3d at 53. Moreover, "[i]f the arbitration clause is broad, the Court 'must find that the parties

bargained to have any dispute that arguably falls within the scope of that clause settled through arbitration absent compelling proof to the contrary.'" *Cleveland Wrecking Co. v. Iron Workers Local Union 40*, 947 F. Supp. 745, 748 (S.D.N.Y. 1996), *aff'd*, 136 F.3d 884 (2d Cir. 1997) (quoting *Ottley v. Sheepshead Nursing Home*, 688 F.2d 883, 886 (2d Cir. 1982)).

Applying these standards, there can be no doubt that Respondents' claims, as well as those in Petitioner's demand for arbitration, fall within the scope of the arbitration clause and, accordingly, that Petitioners are entitled under § 4 of the FAA to an order compelling arbitration of those claims. The Franchise Agreement contains a broad, generic arbitration clause, requiring the submission to arbitration of "all disputes, controversies or claims . . . arising out of or relating to this Agreement" Each of Respondents' claims plainly arises out of and relates to the Franchise Agreement. *See Prima Paint Corp. v. Flood and Conklin Mfg. Co.*, 388 U.S. 395, 406, 87 S. Ct. 1801, 1807 (1967) (language requiring arbitration of "[a]ny controversy or claim arising out of or relating to th[e] Agreement, or the breach thereof" was "easily broad enough to encompass" plaintiff's claim for fraudulent inducement and rescission). All of the issues raised by Respondents in the State Court Action are referable to arbitration. BAB therefore is entitled to an Order compelling arbitration of those disputes. 9 U.S.C. § 4.

## CONCLUSION

For the foregoing reasons, Petitioner's Petition to Compel Arbitration pursuant to Section 4 of the FAA should in all respects be granted

**BAB SYSTEMS, INC.**

s/ Marc P. Seidler

Marc P. Seidler (02544202)
John A. Hughes (06275159)
**DLA PIPER US LLP**
203 North LaSalle Street, Ste. 1900
Chicago, Illinois 60601
Phone No.: 312-368-2160
Fax No.: 312-251-2194